UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN KENNETH NASH,<br><br>Defendant. | Case No. 3:22-cr-00061-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Brian Kenneth Nash's ("Nash") Motion to Suppress evidence seized from an alleged unconstitutional search. ECF No. 23. The government filed an opposition (ECF No. 27), to which Nash replied (ECF No. 29). The Court finds that no evidentiary hearing on the matter is required. For the reasons articulated in this Order, the Court grants in part and denies in part the motion.

**I.     BACKGROUND**

On August 1, 2022, Lyon County Sherrif's Office (the "LCSO"), deputies were dispatched to 5365 Desert Lane in Stagecoach, Nevada, after a "drive-by" shooting was reported. ECF No. 27-2 at 2. The reporting party observed a gray SUV pulling a dump trailer flee the area after several gun shots came from the passenger side of the vehicle. *Id*. Deputy R. Stout observed a "gray GMC Yukon (bearing Nevada license plate 86A350) . . . pulling a dump trailer" while he was driving to the scene of the reported shooting. *Id*. Deputy Stout stopped the SUV and waited for back-up before he read the suspect vehicle driver his *Miranda* rights. *Id*. at 2–3. The driver stated he

1

understood his rights and agreed to speak with the officers at which point he denied knowledge of any shooting. *Id*. at 3.

Deputy Stout explained to the other officers that he had not yet responded to the scene of the reported shooting and needed to do so to speak with the reporting party. *Id*. After he transferred the suspect vehicle driver into another officer's patrol vehicle, Deputy Stout arrived at the scene of the alleged shooting. *Id*. The reporting party stated that gunfire woke him up and as he looked out of his bedroom window, he observed a dark colored SUV pulling a black dump trailer quickly traveling down the street. *Id*. The reporting party also observed and identified a man fleeing the scene on-foot. *Id*. The man appeared to be unharmed and emerged from behind a black Subaru with bullet holes in it. *Id*. Deputy Stout spoke with an additional observer who offered a similar description of the suspect vehicle and reported that a male passenger extended his arm out of the suspect vehicle's front passenger-side window with what appeared to be a gun in hand. *Id*. The observer told Deputy Stout he could identify the suspect vehicle if he saw it again and the two drove to the scene of the traffic stop. *Id*. Once there, the observer confirmed that the gray GMC Yukon Deputy Stout stopped was the same vehicle he initially observed fleeing the scene after the reported shooting. *Id*. at 4.

Deputy Stout returned to the scene of the alleged shooting to collect evidence and take photographs. *Id*. Meanwhile back at the traffic stop, Sergeant Pope spoke with the suspect vehicle driver who stated that Nash was both in the vehicle with him and was the shooter. *Id*. The suspect vehicle driver also reported that Nash and the same man the reporting party saw fleeing on-foot from the alleged shooting, had some type of disagreement prior to the shooting. *Id*. The suspect vehicle driver reported that he dropped Nash off at Nash's home after the shooting which he described as "the second to last house at the north end of Apache Drive." *Id*.

After this, another deputy accompanied Deputy Stout to the second to last house at the north end of Apache Drive which they noted to be 4665 Apache Drive. *Id*. The deputies spoke to the resident and discovered that Nash did not live there. *Id*. The resident claimed a man matching Nash's description lived in a motorhome just outside the neighboring home located south of her own. *Id*. The resident further reported that a vehicle matching the suspect vehicle description

2

dropped Nash off an hour earlier at the neighboring address. *Id*. The neighboring address was 4725 Apache Drive in Stagecoach, Nevada. ECF No. 23-2 at 3.

That same day, the LCSO informed Detective Nicholas Baugh of the drive-by shooting and that Nash was one of three suspects involved. *Id*. at 3. Detective Baugh confirmed that he knew Nash from previous law enforcement contacts. *Id*.

On August 5, 2022, Deputy Mullen responded to 4725 Apache Drive due to a report of a domestic dispute between husband and wife. ECF No. 27-3 at 2. By the time Deputy Mullen arrived, the husband was no longer on the property. *Id*. The reporting party, and resident, relayed that Nash, his wife, and their son were staying on her property. *Id*. Deputy Mullen contacted Nash's wife who reported Nash hit her after they got into an argument about their trailer. *Id*. Nash's wife showed Deputy Mullen their black and white camper trailer located on the property when he asked her where the battery occurred. *Id*. at 3.

On August 11, 2022, Detective Baugh applied for a search warrant in which he opined that Nash was (1) a prohibited person in possession of a firearm in violation of Nev. Rev. Stat. § 202.36, and (2) involved in an assault with a deadly weapon, a felony described by Nev. Rev. Stat. § 200.471. *See generally*, ECF No. 23-2. The subjects of the search warrant were Nash, the 4725 Apache Drive property, and various vehicles. *Id*. at 5–6. The affidavit application requested permission to search the person, residence, and vehicles for "[a]ny firearms, ammunition or evidence related to the assault with a deadly weapon." *Id*. at 6. The affidavit also referenced the domestic abuse incident that involved Nash as well as an additional incident in which a known associate of Nash informed officers Nash shot at him. *Id*. at 4, 5.

Detective Baugh's search warrant application was granted. ECF No. 23-1 at 3–4. It was ordered that Nash; 4725 Apache Drive, including a black and white camp trailer, all out buildings, trailers, camp trailers, and motorhomes on the property; a 2017 black Nissan Rogue (NV license plate 930H61, VIN#5N1AT2MT8HC809909); and a 2015 Nissan (NV license plate 487R05, VIN#3N1CN7AP8FL935087) (the "white Nissan"), were to be searched for the following:

> Firearms any caliber, any ammunition, any firearm related gear, parts or equipment including those items contained within safes or other locked boxes and/or containers or vehicles. All incoming and outgoing phone numbers and text

3

> messages, stored phone numbers, phone lists, Esn's, SIM card data, e-mails, photographs, actual phone number for specific phone and any other pertinent information stored in the phone being searched related to the ADW or possession of illegal firearms. Any gang indicia, but not limited to drawings, photos, logos, Articles of personal property tending to establish the identity of persons in control of vehicle and residence including, but not limited to, rent receipts, utility bills, letters, bank statements, official documents and other items of personal property.

*Id*. at 4. The day officers executed the search warrant, Nash was identified driving the white Nissan and parking it at his residence on the 4725 Apache Drive property. ECF No. 27-5 at 3. Nash was also observed going inside the white Nissan numerous times. *Id*.

The following property was found and seized as a result of the ensuing search at 4725 Apache Drive: (1) from the white Nissan, a black and brown Smith and Wesson .38 revolver loaded with five rounds (serial #J506867), 40 rounds of .38 special ammunition, a black digital scale, a small plastic bag with a white crystalline substance later identified as methamphetamine, and one .38 caliber spent shell casing; (2) from Nash's person, a black Apple iPhone; (3) from the camp trailer, methamphetamine pipes; (4) from the storage shed west of the camp trailer, 18 rounds of .38 special ammunition—personal property and gang indica were also observed in the storage shed; and (5) two gang drawings. ECF No. 27-5 at 3–5. Nash motions the Court to suppress all the evidence seized pursuant to the search warrant and requests an evidentiary *Franks* hearing for other reasons. *See generally*, ECF No. 23.

## II.  LEGAL STANDARD

The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. While a warrant is generally required, "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness,' [meaning] the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Flippo v. West Virginia*, 528 U.S. 11 (1999)). "[W]arrantless searches and seizures are per se unreasonable" under the Fourth Amendment. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). Any evidence resulting from an unconstitutional search or seizure cannot be admitted, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

### III.  DISCUSSION

Nash motions the Court to suppress all the evidence seized during the search of the Apache Drive property because the warrant was allegedly overbroad and lacked probable cause as to both the 4725 Apache Drive property and the items to be seized. *See generally,* ECF No. 23. Nash also requests an evidentiary *Franks* hearing because Detective Baugh inaccurately reported Nash's criminal history and omitted material facts in his affidavit. *Id*. at 4. In opposition, the government contends that no *Franks* hearing is required because the misstated criminal history and omissions were not material to a finding of probable cause. ECF No. 27 at 11–13. More generally, the government argues that the affidavit and issued search warrant were not overbroad and did not lack probable cause as to the place to be searched or the items to be seized. *Id*. at 6–8.

**A.  The Search Warrant and Probable Cause**

Specifically, Nash argues that the government lacked probable cause to search the 4725 Apache Drive property and to search for each category of evidence to be seized: (1) firearm-related evidence, (2) phone-related evidence, (3) gang indica, and (4) personal property. ECF No. 23 at 7, 10. As to the Apache Drive property, Nash alleges that Detective Baugh lacked support to believe Nash resided on or had access to the property. *Id*. at 8. In opposition, the government argues that the search warrant was supported by probable cause because the totality of the circumstances suggested that there was a fair probability evidence of the crime would be located on the property where Nash appeared to reside. ECF No. 27 at 7.

As to the categories of evidence to be seized, Nash offers many supporting arguments that are particular to each category. However, the Court only addresses the most material category of evidence in this Order, the firearm-related category. Nash alleges that Detective Baugh failed to describe the firearm-related category with sufficient particularity because he knew that the gun allegedly used in the assault was an "unknown make/caliber revolver" but requested permission to search for "any firearm, any ammunition, or any firearm related gear." ECF No. 23 at 10–12. Therefore, to Nash, the search warrant lacked probable cause for the firearm-related category because the affidavit was insufficiently particular and overbroad. *Id*. at 12.

5

A search warrant "must comply with two related but distinct rules[,]" the first of which is particularity. *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). Particularity is a function of sufficiently describing "the place to be searched or things to be seized" while taking account of the "circumstances of the case and the types of items involved." *Id*. (citing *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986)). Second, the warrant "must be no broader than the probable cause on which it is based." *Id*. (citing *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1974)).

Probable cause for a search "requires a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (quotation omitted). Moreover, probable cause requires the court "to deal in probabilities, not certainties, and for that reason it doesn't demand 'the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" *United States v. Nora*, 765 F.3d 1049, 1053 (9th Cir. 2014) (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

Probable cause existed as to the search of the 4725 Apache Drive property because there was a fair probability that evidence of a crime would be found there. The affidavit clearly contains a report that identified Nash as the shooter in the alleged assault. ECF No. 23-2 at 3. Moreover, it was clear to the deputies that Nash appeared to reside on the 4725 Apache Drive property. Nash correctly points out that Detective Baugh misstated that the domestic battery took place at the same location described as Nash's residence by the suspect vehicle driver. However, Nash fails to reconcile that the affidavit also stated that the driver's description of Nash's home was "[l]ater identified as, 4725 Apache Drive[.]" *Id.* The affidavit also referenced the alleged domestic dispute incident that involved Nash and his wife at 4725 Apache Drive, further reinforcing that Nash appeared to live on the property. *Id*. at 4. The totality of the circumstances suggest that there was a fair probability evidence of the crime would be found on the Apache Drive property because Nash, a suspect in the alleged assault, was believed to live there. The Court finds that probable cause existed to search the 4725 Apache Drive property where Nash appeared to reside.

Probable cause also existed as to the search and seizure of any firearm-related evidence. Nash offers *Nora* in support of his argument that this category of evidence lacked probable cause. 765 F.3d 1049. In *Nora*, the district court's ruling on a motion to suppress was reversed because the Ninth Circuit determined that the officers' observation of Nora with a blue-steel semiautomatic handgun, paired only with the officers' knowledge of Nora's criminal history, did not provide probable cause for the search and seizure of firearms and ammunition in general. *Id*. at 1058–59. The Ninth Circuit reasoned that "probable cause to believe that some incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same." *Id*. at 1060.

According to the Ninth Circuit, the issue in *Nora* was "whether a fair probability existed that Nora owned other firearms, in addition to the single firearm the officers had observed." *Id*. at 1059. That, of course, is the same issue here. Cognizant of *Nora*, the Court must also recall that "hard and fast rules" do not dictate a determination of probable cause in the Ninth Circuit. *United States v. Freitas*, Case No. 20-CR-00223-LHK-1, 2021 WL 4222041, at *5 (N.D. Cal. Sept. 16, 2021). Instead, probable cause is controlled by the totality of the circumstances which requires the court to consider factors "in the full context of each particular case." *United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013).

The factors and full context of this Case are different than those in *Nora*. First, Detective Baugh's affidavit provides a breadth of evidence that the Court may consider in its determination of probable cause. For example, deputies did not observe Nash with a specific type of gun. Instead, three witnesses vaguely described the firearm from the alleged assault as "an unknown make/caliber revolver," "a hand gun," and "a gun." ECF No. 23-2 at 3–4. Second, Detective Baugh's affidavit includes an additional and unrelated incident in which Nash allegedly shot at another individual, but no description of the firearm was given. *Id*. at 5. As Detective Baugh explains in his affidavit, "it is common for individuals who engage in [. . .] assaults with a deadly weapon to be in possession of firearms or other weapons." *Id*. Detective Baugh sufficiently explains that because Nash was allegedly involved in the drive-by shooting, it is probable that he

may possess more firearms—for example, the one Nash allegedly used in the additional shooting incident.

The totality of the circumstances in the present matter establish a fair probability that Nash may have possessed more than one firearm. *See United States v. King*, Case No. 20-10007, 2021 WL 127828, 708–09 (9th Cir. 2021) (affirming probable cause existed to search for any firearms as opposed to a singular large silver and gold revolver the defendant was observed with because, amongst other things, the affidavit included an additional report that the defendant received and concealed a firearm for another person which helped establish a fair probability that the defendant owned or possessed other firearms).

For the above reasons, the Court finds that probable cause existed to search the 4725 Apache Drive property for firearms and firearm-related evidence.[1]

**B.  The Firearm Seizure**

Nash argues that the firearm must be suppressed because it resulted from an overbroad search warrant. ECF No. 23 at 15. In opposition, the government alleges that the deputies: (1) were lawfully on the property because they had a valid search warrant; (2) lawfully seized the revolver from the vehicle under the plain-view exception; and (3) after seeing the revolver, had probable cause to search the vehicle under the automobile exception which led to the recovery of additional ammunition. ECF No. 27 at 9–10. In reply, Nash argues that the plain-view and automobile exceptions are not applicable because the warrant was invalid, meaning the officers would have had to trespass onto the curtilage of Nash's property to put themselves in a position where the firearm was in plain view. ECF No. 29 at 9.

Warrantless searches are "per se unreasonable." *Horton v. California*, 496 U.S. 128, 133– 34, n. 4 (1990). The warrant requirement, however, is subject to certain exceptions. *Stuart*,

---

[1] The government concedes that the affidavit failed to support a finding of probable cause to search the vehicles and seize cell phones. ECF No. 27 at 6, n.1. Because the Court holds that probable cause existed as to the search of the Apache Drive property and the seizure of firearms and firearm-related evidence, a material portion of the warrant, severance is appropriate here. *See United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) ("severance is not available when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search."). The Court finds that the seized cell phone must be suppressed. Further, the portions of the warrant authorizing searches for and seizures of gang indica and personal property must be severed as probable cause did not exist for them. The Court reserves ruling upon the drugs and drug paraphernalia.

8

547 U.S. at 403. "The plain-view doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable." *Horton*, 496 U.S. at 133. While lawfully executing a search warrant, an officer may seize evidence of a crime if the object is discovered in plain view. *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996).

For the plain-view doctrine to apply, officers must not violate the Fourth Amendment in arriving at the place from which evidence could be plainly viewed. *Horton*, 496 U.S. at 136. Essentially, this requires that "the officers 'have a lawful right of access to the object itself.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1672 (2018) (quoting *Horton*, 496 U.S. at 136–37). The Court has held that the search warrant was valid because probable cause existed to search the Apache Drive property for firearms and firearm-related evidence. *See* search warrant and probable cause discussion *supra* Section III.A. The deputies possessed a valid search warrant that gave them a lawful right of access to enter the 4725 Apache Drive property and search for firearms and ammunition. As such, the Court finds that Nash's Fourth Amendment protections were not violated because the deputies had a lawful right of access to the property where the vehicle was parked.

The plain-view doctrine requires that (1) the item be in plain view, and (2) the item's incriminating character be immediately apparent. *Horton*, 496 U.S. at 136–37. Here, both requirements are clearly satisfied. Deputies observed the firearm on the passenger seat of the vehicle parked within feet of Nash's camp trailer. Moreover, the vehicle window was open, meaning the deputies view of the firearm was direct, unobstructed, and clear. *See* ECF No. 27-7 at 2. Whether the incriminating character of the item is immediately apparent depends on "whether the officers had 'probable cause to believe [it was] associated with criminal activity.'" *United States v. Kahre*, Case No. 2-05-CR-121-DAE-RJJ, 2009 WL 10715476, at *16 (D. Nev. May 12, 2009) (quoting *Horton*, 496 U.S. at 131, n. 1). Here, the deputies were aware that Nash was a convicted felon prohibited from possessing a firearm and that he was an identified suspect in the alleged assault as well as an unrelated shooting. The incriminating character of the firearm was immediately apparent to the deputies because they had probable cause to believe that the firearm was associated with criminal activity. For these reasons, the Court finds that the plain-view doctrine clearly applies to the seizure of the firearm.

The automobile exception provides that a search of an automobile can be reasonable without a warrant because of an automobile's "ready mobility" as well as "the pervasive regulation of vehicles capable of traveling on the public highways." *Collins*, 138 S.Ct. at 1669–70 (citations omitted). "Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *See United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012).

After seeing the revolver in plain view, the deputies had probable cause to believe that the vehicle contained evidence of a crime. Again, the deputies were lawfully on the property when they observed the firearm in plain view on the passenger seat of the vehicle. They also knew that Nash was a convicted felon prohibited from possessing a firearm. Further, the deputies observed Nash rummaging through the vehicle moments before the search warrant was executed. ECF No. 27 at 11. The Court finds that the deputies had probable cause to search the vehicle because the totality of the circumstances establish a fair probability that incriminating evidence would be found inside. For these reasons, the Court denies Nash's request to suppress the firearm and ammunition. The plain-view and automobile exceptions to the exclusionary rule clearly apply in this matter.

### C. Misstated Criminal History and Omissions

Nash argues that Detective Baugh's misstated and inaccurate reporting of his criminal history, and other omissions from the affidavit, materially affected a finding of probable cause. ECF No. 23 at 4–7. This is the primary basis on which Nash requests an evidentiary *Franks* hearing. *Id*. The government does not contend that criminal history inaccuracies were included in the affidavit. ECF No. 27 at 11–12. Rather, the government argues that the inaccuracies do not warrant a *Franks* hearing because they were immaterial to a finding of probable cause. *Id*. at 12.

A defendant is entitled to an evidentiary hearing concerning the validity of a search warrant's affidavit when a substantial preliminary showing has been made that "(1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). To be granted an evidentiary hearing, the requesting party must show that the "affidavit purged of those falsities and supplemented by the

omissions would not be sufficient to support a finding of probable cause." *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985). In other words, the requesting party must make a preliminary showing that the affidavit contained "material" misrepresentations or omissions. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1110 (9th Cir. 2005) (citation omitted).

Whether Nash has made a substantial preliminary showing that the inaccurate criminal history descriptions and other omissions were recklessly or intentionally made is not at issue here because the Court finds that they were not material to a finding of probable cause. The Court acknowledges that Nash's criminal history was excessively represented by Detective Baugh. However, even after purging the affidavit of the inaccuracies, it remains undisputed that Nash is a twice convicted felon prohibited from possessing a firearm. This fact alone provides sufficient basis for probable cause as Nash is prohibited from possessing any firearm and was also positively identified by an eyewitness to the shooting and assault which was the primary basis of the application for and issuance of the challenged search warrant.

The Court finds that the misrepresentations and omissions in the affidavit were not material to a finding of probable cause. For this reason, the Court finds that a *Franks* hearing is not required.

### IV.    CONCLUSION

IT IS THEREFORE ORDERED that Nash's motion to suppress (ECF No. 23) is **DENIED** in part and **GRANTED** in part in accordance with this Order.

IT IS FURTHER ORDERED that Nash's request for a *Franks* hearing is **DENIED**.

IT IS SO ORDERED.

DATED this 3rd day of March, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE